# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| RICHARD W. SPATES, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | CAUSE NO. 3:07-CV-111 PPS |
| WALTER E. MARTIN, | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Richard W. Spates, a *pro se* prisoner, was docked 180 days of good time credit after a cell phone that was linked to him was found in the institution where he was housed. In this habeas petition, he challenges the loss of his good time credit.

Here's what the evidence shows: After a cell phone was found in the Westville Correctional Facility ("WCF"), Officer S. Hert was assigned to investigate whether it belonged to Spates. (DE 10-2.) Spates's name was brought to Officer Hert's attention by a confidential informant who told the officer that Spates brought the cell phone to WCF when he transferred from another institution. (*Id.*) The informant also advised Officer Hert that Spates's picture was on the phone and urged the officer to check the numbers on the phone because Spates used it to make calls. (*Id.*)

Hert did an internet search which revealed that some of the numbers on the phone matched the names and numbers of two individuals on Spates's visitor and telephone lists. (*Id.*) One number on the cell phone was for Hattie Trader, Spates's grandmother. (*Id.*) Another number was for Sonya Robinson who was also on Spates's visitor log and his authorized phone list. (*Id.*) And there was more: Spates's photo was indeed found on the cell phone. (*Id.*) When

Hert interviewed Spates, he denied ever using the cell phone. (*Id.*) However, he identified Trader as his grandmother. (*Id.*) Spates denied that he put his picture on the cell phone, but the picture had a date on it for a time when Spates was at his previous institution, which led Officer Hert to believe – consistent with what the informant had said – that Spates smuggled the phone into WCF. (*Id.*) So based on the evidence gathered during the investigation, Hert issued a conduct report against Spates charging him with "Engaging in trafficking/Attempting to commit any Class A offense," in violation of the Adult Disciplinary Procedures ("ADP") Code A113/111. (*Id.*)

Spates was transferred from WCF to a different facility before a hearing could be held at WCF. (DE 10-11.) The screening hearing was then postponed for weather conditions and also because Spates requested certain evidence from WCF. (DE 10-4.) Specifically, he demanded four items of physical evidence: (1) the camera in the dormitory; (2) his confiscated mail and pictures; (3) the cell phone; and (4) the definition of trafficking. (DE 10-3.) Spates maintained the video would show he had nothing to do with the cell phone. (*Id.*) He declined to call any witnesses, but requested a lay advocate. (*Id.*)

Soon thereafter, a three member Conduct Adjustment Board ("CAB") held a hearing. (DE 10-6.) Here's what Spates had to say about the case against him at his hearing:

> The video would show I had nothing to do with it. She's making accusations and has nothing to do with it. She linked me to it b/c she linked my uncle N. Hamilton. I don't have anything to do with this. I was questioned about staff + trafficking not about the cell phone – it was secondary.

(*Id.*) Another inmate named Hollingsworth was present at the hearing as Spates's lay advocate. (DE 10-5, 10-6.) But it appears none of the evidence Spates requested was available at the hearing. A photo of the cell phone was entered in the case file, but the actual cell phone itself

2

was not transferred from WCF to Spates' new facility. (DE 10-6.) The video from the security camera that Spates requested was not admitted because it did not exist. (*Id.*) Similarly, the image of Spates in his cell was not available. (*Id.*) Therefore, in lieu of these items, the CAB relied on the staff reports, Spates's statement, evidence from witnesses and physical evidence (the photo of the cell phone) to find Spates guilty of trafficking and attempting to commit any Class A offense. (*Id.*) The CAB handed Spates the following punishments: disciplinary segregation for six months, the loss of 180 days earned credit time, and a demotion in credit class. (*Id.*) After Spates unsuccessfully appealed the CAB's determination through the Final Reviewing Authority, he filed this *habeas corpus* petition to challenge the CAB's determination.

Because Spates has a liberty interest in earned good time, he is entitled to basic procedural protections before the CAB can take it away. These minimal due process requirements are: (1) prior written notice of the charges; (2) an opportunity to present evidence; (3) an impartial decision maker; (4) a written statement of the evidence supporting the disciplinary action and the reasons for it; and (5) "some evidence in the record" to support the finding of guilt. *See Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

Spates asserts several bases for relief. Primarily, he challenges the sufficiency of the evidence against him. But the "some evidence" standard is an exceedingly modest one. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Even a "modicum" or "meager" amount of evidence will suffice. *Id.* And my review is also limited. As the Seventh Circuit has explained:

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh

> the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (citations omitted).

Spates maintains there is no evidence he is guilty of trafficking. He appears to argue that the conduct he was charged with does not amount to a violation of trafficking as that offense is defined under state law. (DE 13 at 11.) But Spates's reliance on the literal statutory definition of trafficking is misplaced. (DE 10-2.) The ADP prohibits cell phones and considers them contraband. Any cell phone found in the facility necessarily comes from outside. The ADP punishes this behavior as trafficking. Spates was charged with violating the ADP policy of trafficking, which is presumably broader than the crime of "trafficking with an inmate" as defined in Indiana Code Section 35-44-3-9. There is nothing impermissible about the Indiana Department of Corrections adopting more stringent restrictions than the state criminal code. Indeed, prison administrators are afforded wide-ranging deference in adopting and executing policies and practices that in their judgment are necessary to preserve order, discipline and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Prison officials do not have to catch a prisoner red-handed in the act of trafficking in order to find him guilty. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (relying on reasonable inference to conclude "some evidence" supported the disciplinary charge of trafficking). In this case, there is much more than "some evidence" to reasonably infer that Spates violated the ADP. Officer Hert's investigative report indicated she received confidential information that, while Spates was at his previous institution, someone provided him with the cell phone. Hert confirmed that the cell phone contained a picture of Spates sitting inside a prison cell. And because the date of that picture preceded Spates's arrival at WCF, Hert

concluded that Spates brought the cell phone to WCF when he transferred there. Hert also reported that the cell phone contained telephone numbers of individuals whose names appeared on Spates's visitor list. And although evidence in the record suggests more than one prisoner used the cell phone, the presence of the names of Spates's friends on the cell phone suggests he exerted more control over the phone than other prisoners did. Spates's argument that all of this evidence was insufficient essentially invites the Court to reweigh the evidence submitted to the CAB, which I will not do. The evidence at the hearing sufficiently supported the CAB's determination and adequately showed Spates violated prison trafficking rules. So Spates is not entitled to relief on his claim of insufficient evidence.

Spates also complains that WCF did not send the evidence he requested to the Miami facility where the disciplinary hearing was actually held. Prisoners in disciplinary hearings must generally be allowed access to evidence favorable to their defense. *Piggie v. Cotton*, 344 F.3d 674, 678-79 (7th Cir. 2003) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). But *Brady* only applies to evidence that is exculpatory, and the evidence that Spates complains was missing is not. For example, Spates claims he was denied certain security videotape and a chain of custody card, but he has offered no competent evidence (other than his conclusory allegations) that these items even exist. Nor does it appear that Spates ever requested a chain of custody card prior to his disciplinary hearing. (DE 10-3.) And even if these items existed, Spates does not explain how they would exculpate him from the charge that he trafficked the phone from one facility to another. These items would only shed light on events that occurred *after* the phone had been trafficked.

In addition, Spates complains that the actual cell phone he was charged with trafficking

5

was not made available at the hearing. But he only asserts that "[t]he phone itself could disprove" Hert's report that a "photo of [him] was taken by the cell phone." (DE 13 at 10.) Recall that Spates does not dispute that his picture was in fact on the cell phone. (DE 10-2.) He only contends that it got there somehow else. But how? We're only left to speculate. And even if he is correct in the dubious point that some other device took the picture and it was transferred to the phone in question, this is not exculpatory of trafficking. For even if Spates is correct that the contraband phone was not used to take the photo, that does not tend to prove his innocence on the trafficking charge. There was an informant who said Spates brought the phone into WCF. And several of the numbers on the phone were connected to Spates. Spates does not dispute this latter fact. So it cannot be said that the phone was, or contained, exculpatory evidence. Moreover, the fact that the CAB found Spates guilty of trafficking contraband without ever physically examining the contraband is not enough to merit a finding that Spates's due process rights were violated. *See Hayes v. McBride*, 965 F.Supp. 1186, 1189 (N.D.Ind. 1997) (citing *Griffin v. Spratt*, 969 F.2d 16 (3d. Cir. 1992)).[1]

Spates next argues that he was not assigned a lay advocate. Due process requires that some inmates be assigned a lay advocate. For example, where an inmate is illiterate, or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate understanding of the case, he should be free to seek the aid of a competent fellow inmate. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Spates was

---

[1] Moreover, it does not appear that Spates ever received the definition of trafficking that he requested. Spates does not draw attention to this issue. But to the extent Spates claims he was not made aware of the charges against him, such a claim is baseless, because it is clear from Officer Hert's investigative report what Spates was being accused of.

afforded the accommodation of a fellow inmate advocate. But he nonetheless complains he should have been provided a staff advocate because a prison staff member would have done a better job. Spates misunderstands the purpose of a lay advocate. In this case, the record indicates that Spates is literate and competent to represent himself and the issues in his disciplinary proceeding were simple. So Spates had no constitutional right to a lay advocate, let alone the advocate of his choice.

Spates also argues his transfer to the Miami facility prejudiced his ability to seek and obtain the physical evidence he requested. But for reasons previously discussed, the absence of these items did not deprive Spates of due process in his hearing. To the extent Spates complains about the propriety of the transfer itself, such a claim cannot be remedied through a habeas proceeding. *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004).

Finally, Spates argues that the CAB chairperson was biased and that there was no independent verification of the confidential informant. Spates admits he never raised these issues during his administrative appeal, so he failed to exhaust his remedies and these grounds are forfeited. *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002).

Therefore, the *habeas corpus* petition is **DENIED**.

**SO ORDERED**.

ENTERED: March 18, 2009.

                                           s/ Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT